**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LEON EUGENE MORRIS, | No. 2:12-CV-1774-TLN-DMC-P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| MINI, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. All Defendants have been served. Pending before the court is Defendants' motion to dismiss (ECF No. 37).

///
///
///
///
///
///
///
///
///

# I. PLAINTIFF'S ALLEGATIONS

This action proceeds on plaintiff's first amended complaint. Plaintiff names the following Defendants: (1) V. Mini; (2) Cannedy; and (3) L. Turner. Plaintiff alleges Defendants violated his First Amendment right against retaliation, his Eighth Amendment right to adequate mental health care and safety, and Fourteenth Amendment right to due process. Plaintiff's allegations as to each Defendant are as follows:

<u>Mini</u> – Plaintiff alleges Defendant Mini intentionally and deliberately violated his Fourteenth Amendment right to due process by falsifying a document that stated the issue of Plaintiff refusing a cellmate out of fear for his life had been resolved. Plaintiff alleges, because of the false document, Defendant Mini sent Plaintiff back to the yard with a cellmate. Plaintiff alleges he did not receive the necessary requirements of either speaking to Defendant Mini or going before the Institutional Classification Committee ("ICC") before being sent back to the yard. Plaintiff further alleges, after he refused to be sent back to the yard with a cellmate, he was given multiple "stacked" Rules Violation Reports ("RVR"), which is allegedly illegal.

Plaintiff alleges Defendant Mini violated his Eighth Amendment rights by acting with deliberate indifference to Plaintiff's safety. Plaintiff alleges Defendant Mini falsified documents that resolved the issue of Plaintiff refusing a cellmate out of fear for his life. Plaintiff does not allege facts establishing why living with a cellmate would cause him to fear for his life.

<u>Cannedy</u> – Plaintiff alleges Defendant Cannedy violated his Eighth Amendment rights by acting with deliberate indifference to Plaintiff's mental health and safety. Plaintiff claims he is mentally ill and a schizophrenic. Plaintiff's schizophrenia causes him to hear loud, demanding, and violent voices that often tell him to kill himself or others. Plaintiff also alleges he is severely depressed which causes him to suffer from additional suicidal ideations. Plaintiff contends his clinician taught him to use the radio and television as coping devices and as a distraction if he has suicidal thoughts. Plaintiff states after telling Defendant Cannedy of the high probability he would commit suicide without his coping devices, Defendant Cannedy "laughed in Plaintiff's face" and confiscated Plaintiff's radio and television for ninety days.

<u>Turner</u> – Plaintiff alleges Defendant Turner violated Plaintiff's Eighth Amendment

2

rights by acting with deliberate indifference to Plaintiff's mental health. Plaintiff alleges he filed a 602[1] report after Defendant Cannedy took away his radio and television and was later interviewed by Defendant Turner regarding the urgency of Plaintiff reclaiming his coping devices. Plaintiff states he explained to Defendant Turner the "risk and dangerous probability of Plaintiff committing suicide" without the coping devices. Plaintiff alleges Defendant Turner still refused to return the radio and television. Shortly thereafter, Plaintiff attempted suicide by hanging. Plaintiff claims he "was found lying on the floor unconscious with a broken noose around his neck." Plaintiff states he spent the next eighteen days on suicide watch after he was revived.

Plaintiff further alleges Defendant Turner violated his Eighth Amendment rights by acting with deliberate indifference to his safety. Plaintiff claims while being released from the Enhanced Out Patient ("EOP") yard, correctional officer Whitted stated, "Morris you're a piece of shit . . . you know I want to put my foot in your ass . . . [and] Morris you mess with kids." Plaintiff alleges "[t]hey both know that people who mess with kids get seriously injured or straight out killed." Plaintiff asserts the other prisoners on the yard could hear the conversation and Defendant Turner stood by "with a smirk on her face listening to everything." Plaintiff alleges correctional officer Whitted deliberately and intentionally made the comment within earshot of other inmates to have Plaintiff seriously injured or killed and that Defendant Tuner "stood right there" and did not say anything or take any action, "[w]hich means it was alright with her."

Plaintiff also alleges Defendant Turner violated his First Amendment rights by retaliating against him. Plaintiff claims throughout 2009 he wrote to the warden at CSP-Sacramento to inform him Defendant Turner was mistreating and bullying Plaintiff with the knowledge that Plaintiff was mentally ill and in the EOP program. Plaintiff alleges Defendant Turner then began to retaliate against him for telling the warden that his staff is mistreating and bullying mentally ill prisoners. Plaintiff alleges Defendant Turner knew of the grievances

---

[1] A "602" is a grievance form that inmates can file against prison staff decisions or staff actions.

3

Plaintiff had been filing because the Sergeant assigned to resolve his complaints told him to stop "writing the warden about Sgt. Turner and c/o Whitted and filing 602's against them. They don't like that and will get you and you don't want them after you."

## II. STANDARD FOR MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a

4

defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III. DISCUSSION

Defendants argue the amended complaint should be dismissed for three reasons: (1) Plaintiff's amended complaint is barred by the doctrine of claim preclusion; (2) Plaintiff's amended complaint fails to state a claim for relief; and (3) Plaintiff's amended complaint is duplicative and frivolous.

### A. Claim Preclusion

Claim preclusion forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." Id. Stated another way, "[c]laim preclusion . . . bars any subsequent suit on claims that were raised or could have been raised in a prior action." Cell Therapeutics, Inc. v. Lash Group, Inc., 586 F.3d 1204, 1212 (9th Cir. 2009). "Newly articulated claims based on the same nucleus of facts are also subject to a res judicata finding if the claims could have been brought in the earlier action." Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002). Thus, claim preclusion prevents a

plaintiff from later presenting any legal theories arising from the "same transactional nucleus of facts." Hells Canyon Preservation Council v. U.S. Forest Service, 403 F.3d 683, 686 n.2 (9th Cir. 2005). The party seeking to apply claim preclusion bears the burden of establishing the following: (1) an identity of claims; (2) the existence of a final judgment on the merits; and (3) identity or privity of the parties. See Cell Therapeutics, 586 F.3d at 1212; see also Headwaters, Inc. v. U.S. Forest Service, 399 F.3d 1047, 1052 (9th Cir. 2005).

Determining whether there is an identity of claims involves consideration of four factors: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions. See ProShipLine, Inc. v. Aspen Infrastructure Ltd., 609 F.3d 960, 968 (9th Cir. 2010). "Whether two suits arise out of the same transactional nucleus depends upon whether they are related to the same set of facts and whether they could conveniently be tried together." Id. (quoting Western. Sys., Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir. 1992)) (internal quotation marks omitted).

As to privity of the parties, privity is "a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." Kourtis v. Cameron, 419 F.3d 989, 996 (9th Cir. 2005), abrogated by Taylor v. Sturgell, 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) (quoting United States v. Schimmels, 127 F.3d 875, 881 (9th Cir.1997)). Privity between parties exists "when there is sufficient commonality of interest." Robinson v. Brown, No. 2:12-CV-1776 MCE DAD, 2014 WL 1779460, at *7 (E.D. Cal. May 5, 2014). "Where the issues in separate suits are the same, the fact that the parties are not precisely identical is not necessarily fatal." Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402 (1940). In Scott v. Kuhlmann, different defendants were named in the two actions, but all were "employees of the FCC who participated in the inquiry" at issue in the suit. 746 F.2d 1377, 1378 (9th Cir. 1984). In Scott, the Ninth Circuit held that even if two actions do not have the exact same

defendants, privity still exists "between officers of the same government." Id. See also Anderson v. Mendoza, No. 2:17-CV-1244-KJM-DB-P, 2018 WL 6528429, at *5 (E.D. Cal. Dec. 12, 2018) ("The respondent in plaintiff's former habeas action is in privity with the defendants in this action because they are officers of the same state government and agency"); Konarski v. City of Tucson, 289 F. App'x 242, 244 (9th Cir. 2008) ("There is privity in these cases because each current defendant is a government or government employee who is so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.") (internal quotation marks omitted).

To determine the existence of a final judgment on the merits, "Federal Rule of Civil Procedure 41(b) states that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal . . . other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits." Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002) (interpreting a district court's judgment that only stated the action was dismissed and did not specify with or without prejudice is an adjudication on the merits under Rule 41(b), unless one of the exceptions applies). A case dismissed "with prejudice is an acceptable form of shorthand for an adjudication upon the merits." Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001) (internal quotation marks omitted). Additionally, "a summary judgment dismissal [] is considered a decision on the merits for res judicata purposes." Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 988 (9th Cir. 2005).

Based on the analysis below, this Court recommends Plaintiff's first amended complaint be dismissed because it is barred by the doctrine of claim preclusion. To begin, the Court notes and takes judicial notice of Plaintiff's previous lawsuits related to the alleged First Amendment, Eighth Amendment, and Fourteenth Amendment violations raised in the current action. In August 2010, Plaintiff filed his first lawsuit against Defendants alleging the same Eighth Amendment and First Amendment violations. See Morris v. Virga, et al., 2:10-CV-02069-TLN-DAD. In May 2012, Plaintiff filed his second lawsuit alleging the same First Amendment violations. See Morris v. Nangalama, et al., 2:12-CV-01202-MCE-KJN. In July

2012, Plaintiff filed his third lawsuit alleging the same First Amendment and Eighth

Amendment violations.  See Morris v. Turner, et al., 2:12-CV-01950-WBS-AC.  These prior

lawsuits form the basis for the res judicata Defense raised by the Defendants and discussed

below.

#### 1.  Claims Against Turner

##### a.  First Amendment – Retaliation

First, Plaintiff raises the same claim of retaliation by Defendant Turner for writing

to the warden about being mistreated as Plaintiff raised in his first lawsuit filed in 2010 and his

third lawsuit filed in 2012.  The retaliation claim in all three lawsuits is based on the same

evidence, including the same conversation with the Sergeant assigned to resolve Plaintiff's

complaints.  Because the suits involve the infringement of the same right on the same incident,

Plaintiff's First Amendment retaliation claim against Defendant Turner is barred by claim

preclusion.

Second, Plaintiff sued Defendant Turner on the same retaliation claim in all three

prior lawsuits.  Although the addition or subtraction of new parties appears to disrupt the "same

parties in both actions" requirement, "[t]he doctrine of privity extends the conclusive effect of a

judgment to nonparties who are in privity with parties to an earlier action."  United States v.

ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980).  Accordingly, "privity exists between

officers of the same government."  See Scott, 746 F.2d at 1378.  Because Plaintiff has named

only officers of CSP-Sacramento as Defendants, all Defendants are in privity with each other and

therefore the "same parties" requirement is satisfied.

Third, although Defendant Turner was sued on the same retaliation claim in all

three prior lawsuits, only the first and third lawsuit reached a final judgment on the merits.  In the

first lawsuit, there was a final judgment on the merits because Defendant's motion for summary

judgment was granted with respect to Plaintiff's claims 1-5, see Mpoyo, 430 F.3d at 988; where

Plaintiff's retaliation claim against Defendant Turner was claim 2.  Morris v. Virga, et al., 2:10-

CV-02069-TLN-DAD.  In the third lawsuit, there was a final judgment on the merits because

Plaintiff's complaint was dismissed and closed as duplicative.  See Stewart, 297 F.3d at 956.

Therefore, because all three elements are met, Plaintiff's First Amendment claim of retaliation against Defendant Turner is barred by the doctrine of claim preclusion and this Court recommends it be dismissed.

b. Eighth Amendment

Beginning with Plaintiff's first Eighth Amendment claim, Plaintiff raises the same claim against Defendant Turner for acting with deliberate indifference to Plaintiff's suicide warning as was raised in Plaintiff's third lawsuit. The Eighth Amendment claim in the two lawsuits are based on the same evidence, including the identical interview Turner conducted with the Plaintiff regarding the urgency of returning Plaintiff's coping devices. Because the suits involve the infringement of the same right on the same incident, Plaintiff's Eighth Amendment claim against Defendant Turner for acting with deliberate indifference to Plaintiff's mental health is barred by claim preclusion.

Second, Plaintiff sued Defendant Turner on the same Eighth Amendment claim in the third prior lawsuit. Although some Defendants are different, Plaintiff sued only employees of CSP-Sacramento, which is a sufficient privity relationship to satisfy the "same parties" requirement for claim preclusion. See Scott, 746 F.2d at 1378.

Third, Plaintiff's third prior lawsuit reached a final judgment on the merits as Plaintiff's complaint was dismissed and closed as duplicative. See Stewart, 297 F.3d at 956. Therefore, because all three elements are met, Plaintiff's Eighth Amendment claim of deliberate indifference by Defendant Turner is barred by the doctrine of claim preclusion and this Court recommends it be dismissed.

Turning to Plaintiff's second Eighth Amendment claim, Plaintiff raises another claim against Defendant Turner for acting with deliberate indifference to Plaintiff's safety. However, this is the same claim raised in Plaintiff's first lawsuit. The Eighth Amendment violation arises from the same evidence as previously plead; Defendant Turner heard Correctional Officer Whitted state in front of other inmates to Plaintiff, "you mess with kids," but she did not say anything or take any action, despite knowing child abuse allegations can lead to serious injury or death by other inmates. Because the two suits involve the infringement of the same right under

9

the same incident, Plaintiff's Eighth Amendment claim against Defendant Turner is barred by claim preclusion. As established above, Defendant Turner was a Defendant in the first lawsuit and thus the "same parties" element is satisfied. Lastly, there was a final judgment on the merits in the first lawsuit because Defendant's motion for summary judgment was granted with respect to Plaintiff's claims 1-5, see Mpoyo, 430 F.3d at 988; where Plaintiff's same claim against Defendant Turner was claim 1. Morris v. Virga, et al., 2:10-CV-02069-TLN-DAD. Thus, this Court recommends both of Plaintiff's Eighth Amendment claims against Defendant Turner be dismissed as claim precluded.

### 2. Claims Against Mini

#### a. Fourteenth Amendment – Due Process

First, Plaintiff's current suit is based on the same incident of "stacked" RVRs which led to the confiscation of Plaintiff's coping devices that Plaintiff plead in his third prior lawsuit. See Morris v. Turner, et al., 2:12-CV-01950-WBS-AC. Here, Defendant Mini is named as one of the officials who contributed to the stacked RVRs. Plaintiff alleges Defendant Mini falsified a document that sent Plaintiff back to the yard with a cellmate, to which Plaintiff refused, and was issued an RVR. Although Plaintiff's claim asserting new facts against an additional Defendant may appear to disrupt the "same claim" element, "[t]wo claims may be identical for claim preclusion purposes even where the second case contains additional facts or legal theories not asserted in the first." Sprinkle v. SB&C Ltd., 472 F. Supp. 2d 1235, 1241 (W.D. Wash. 2006). This is because claim preclusion prevents a plaintiff from later presenting any legal theories arising from the "same transactional nucleus of facts." See Hells Canyon Preservation Council, 403 F.3d at 686 n.2. Here, the "same transactional nucleus of facts" is the stacking of RVRs that lead to the confiscation of Plaintiff's coping devices; therefore, the additional fact that Defendant Mini added to the RVRs by falsifying a document that Plaintiff reacted to is a claim that Plaintiff effectively waived by failing to bring it in the prior lawsuit.

Second, as established above, Defendant Mini is a Captain at CSP-Sacramento and thus in privity with the Defendants named in Plaintiff's third prior lawsuit. See Scott, 746 F.2d at 1378.

10

Third, Plaintiff's third prior lawsuit reached a final judgment on the merits as Plaintiff's complaint was dismissed and closed as duplicative. See Stewart, 297 F.3d at 956. Therefore, because all three elements are met, Plaintiff's Fourteenth Amendment claim against Defendant Mini is barred by the doctrine of claim preclusion and this Court recommends it be dismissed.

### b. Eighth Amendment

First, Plaintiff's Eighth Amendment claim is based on allegations that Defendant Mini falsified a document that stated the issue of Plaintiff refusing a cellmate out fear for his life had been resolved. However, this is a new legal theory arising from the "same transactional nucleus of facts" involving the stacked RVRs against Plaintiff that he plead in his third prior lawsuit. See Morris v. Turner, et al., 2:12-cv-01950-WBS-AC. Plaintiff now alleges additional facts that Defendant Mini forging a document regarding Plaintiff's perception of his personal safety with a cellmate reveals an alleged deliberate indifference for Plaintiff's safety. However, this is a claim that Plaintiff could have brought in the third lawsuit, but failed to do so, because it stems from the RVR incident. Plaintiff has thus waived his ability to bring any claim on this same incident in the future. See Hells Canyon Preservation Council, 403 F.3d at 686 n.2.

Second, as established above, Defendant Mini is a Captain at CSP-Sacramento and therefore in privity with the Defendants named in Plaintiff's third prior lawsuit. See Scott, 746 F.2d at 1378.

Third, Plaintiff's third prior lawsuit reached a final judgment on the merits as Plaintiff's complaint was dismissed and closed as duplicative. See Stewart, 297 F.3d at 956. Therefore, because all three elements are met, Plaintiff's Eighth Amendment claim of deliberate indifference by Defendant Mini is barred by the doctrine of claim preclusion and this Court recommends it be dismissed.

### 3. Claims Against Cannedy

#### a. Eighth Amendment

First, Plaintiff's Eighth Amendment claim in the current suit is based on allegations that Defendant Cannedy acted with deliberate indifference to Plaintiff's suicide

11

warning by proceeding with confiscating Plaintiff's coping devices, which were raised in Plaintiff's third lawsuit. The Eighth Amendment claim in the two lawsuits are based on the same evidence, but with here with new allegations that Defendant Cannedy is the one who physically confiscated the television and radio. Because both lawsuits involve the infringement of the same right under the "same transactional nucleus of facts," and Plaintiff did not bring this claim in his first lawsuit, Plaintiff has effectively waived his ability to bring any claim on this same incident in the future. See Hells Canyon Preservation Council, 403 F.3d at 686 n.2. Plaintiff's Eighth Amendment claim against Defendant Cannedy for deliberate indifference is barred by claim preclusion.

Second, as established above, Defendant Cannedy is a Lieutenant at CSP-Sacramento and therefore in privity with the Defendants named in Plaintiff's third prior lawsuit. See Scott, 746 F.2d at 1378.

Third, Plaintiff's third prior lawsuit reached a final judgment on the merits as Plaintiff's complaint was dismissed and closed as duplicative. See Stewart, 297 F.3d at 956. Therefore, because all three elements are met, Plaintiff's Eighth Amendment claim of deliberate indifference by Defendant Cannedy is barred by the doctrine of claim preclusion and this Court recommends it be dismissed.

**B.      Cognizability of Claims Raised in Current Action**

1. Eighth Amendment

a. Mental Health

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give

rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Here, if Plaintiff's Eighth Amendment claims against Defendant Cannedy and Defendant Turner were not claim precluded, then they would be cognizable because Plaintiff alleges sufficient facts to support a § 1983 claim for deliberate indifference to Plaintiff's mental health. Plaintiff alleges both Defendant Cannedy and Defendant Turner were made aware that if Plaintiff's coping devices were confiscated, he would commit suicide. Defendant Cannedy confiscated the coping devices for ninety days and Defendant Turner laughed in Plaintiff's face when he met with her to discuss the urgency of having his coping devices returned before he attempted to take his own life. Consequently, Defendant Turner and Defendant Cannedy did not return Plaintiff's coping devices and Plaintiff attempted suicide by hanging.

Plaintiff's Eighth Amendment claims against Defendant Cannedy and Defendant Turner, if not claim precluded, would also be cognizable because both Defendants acted with deliberate indifference to Plaintiff's mental health which resulted in significant injury and the unnecessary and wanton infliction of pain. See McGuckin, 974 F.2d at 1059. Plaintiff's coping devices were confiscated because of allegedly illegally stacked RVRs and Defendant Cannedy and Defendant Turner allegedly contributed to stacking those RVRs. Despite the knowledge there was a "high probability" Plaintiff would attempt suicide without his coping devices, Defendant Cannedy and Defendant Turner refused to return them, thus subjectively acting unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834.

b. Safety

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very

14

obviousness of the risk may suffice to establish the knowledge element.  See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk.  See Farmer, 511 U.S. at 844.  The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the plaintiff must show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

Here, if Plaintiff's Eighth Amendment safety claim against Defendant Turner was not claim precluded, it would be cognizable because Plaintiff states a cognizable claim under § 1983.  Plaintiff alleges Defendant Turner acted with deliberate indifference to his safety by not taking action when correctional officer Whitted loudly asserted in front of other inmates that Plaintiff "messes with kids."  Plaintiff alleges "they both know" that inmates exposed for child abuse are seriously injured or killed by other inmates.  Accordingly, the obviousness of the risk is enough to establish the element of Defendant Turner's knowledge.  See Wallis, 70 F.3d at 1077.  Defendant Turner knew of the risk correctional officer Whitted subjected Plaintiff to with his statement and only "smirked" at the comment, thereby disregarding Plaintiff's safety and taking no reasonable steps to respond to the risk.

Turning now to Plaintiff's Eighth Amendment claim against Defendant Mini for acting with deliberate indifference to Plaintiff's safety, even if this assertion was not claim precluded, it should still be dismissed for failure to state a cognizable claim.  Plaintiff alleges Defendant Mini essentially ignored the fact Plaintiff feared for his life if provided a cellmate when Defendant Mini allegedly lied to resolve the issue and sent Plaintiff back to the yard with a cellmate.  However, Plaintiff fails to allege sufficient facts to support an Eighth Amendment claim for deliberate indifference to his safety because Plaintiff does not establish any reason why he harbors this fear or what specific safety risk having a cellmate would impose.  Further, Plaintiff claims in his own complaint that he had been sent to "the hole," or solitary confinement,

for refusing to take a cellmate.  ECF No. 34, at 3.  This punishment for Plaintiff refusing a

cellmate demonstrates officials at the prison had not determined any safety concerns existed that

warranted Plaintiff to be single-celled.  Accordingly, this Court recommends Plaintiff's Eighth

Amendment claim against Defendant Mini be dismissed as precluded and for failure to state a

claim under § 1983.

### 2.  Fourteenth Amendment – Due Process

The Due Process Clause protects prisoners from being deprived of life, liberty, or

property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to

state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or

property interest for which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672

(1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Due process protects against the

deprivation of property where there is a legitimate claim of entitlement to the property.  See Bd.

of Regents, 408 U.S. at 577.  Protected property interests are created, and their dimensions are

defined, by existing rules that stem from an independent source – such as state law – and which

secure certain benefits and support claims of entitlement to those benefits.  See id.

Liberty interests can arise both from the Constitution and from state law.  See

Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976);

Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining whether the Constitution

itself protects a liberty interest, the court should consider whether the practice in question ". . . is

within the normal limits or range of custody which the conviction has authorized the State to

impose."  Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405.  Applying this standard, the

Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time

credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner,

515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308,

323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in

remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has

adopted an approach in which the existence of a liberty interest is determined by focusing on the

nature of the deprivation.  See Sandin v. Connor, 515 U.S. 472, 481-84 (1995).  In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 483-84.  Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence.  See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

Where a prisoner alleges the deprivation of a liberty or property interest caused by the random and unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy.  See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984).  A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983.  See Hudson, 468 U.S. at 531 n.11.  A due process claim is not barred, however, where the deprivation is foreseeable and the state can therefore be reasonably expected to make pre-deprivation process available.  See Zinermon, 494 U.S. at 136-39.  An available state common law tort claim procedure to recover the value of property is an adequate remedy.  See id. at 128-29.

Finally, with respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate.  See Wolff, 418 U.S. at 563-70.  Due process is satisfied where these minimum requirements have been met, see

17

1    Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the

2    record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill,

3    472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is

4    satisfied where "there is any evidence in the record that could support the conclusion reached."

5    Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result

6    of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by

7    way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

8            Here, even if Plaintiff's Fourteenth Amendment claim was not claim precluded,

9    this Court still recommends dismissal of Plaintiff's claim against Defendant Mini for allegedly

10   fabricating a document stating the issue regarding Plaintiff's fear of living with a cellmate was

11   resolved. Plaintiff has failed to allege sufficient facts to support a due process claim because

12   Plaintiff has not established the type of document Defendant Mini allegedly fabricated, nor what

13   liberty interest Plaintiff was deprived of as a result of the false document. Because Plaintiff has

14   not demonstrated how the allegedly falsified document violated his due process rights, this Court

15   recommends Plaintiff's Fourteenth Amendment claim be dismissed as precluded and for failure to

16   state a cognizable claim under § 1983.

17         **C.    Duplicative and Frivolous**

18           In assessing duplicative lawsuits, "we examine whether the causes of action and

19   relief sought, as well as the parties or privies to the action, are the same." Adams v. California

20   Dep't of Health Servs., 487 F.3d 684, 689 (9th Cir. 2007). "Under the first part of the duplicative

21   action test, [t]o ascertain whether successive causes of action are the same, [a court should] use

22   the transaction test, developed in the context of claim preclusion. In re Consol. Salmon Cases,

23   688 F. Supp. 2d 1001, 1007 (E.D. Cal. 2010) (internal quotation marks omitted). "[A] suit is

24   duplicative if the claims, parties, and available relief do not significantly differ between the two

25   actions." Adams, 487 F.3d at 689 (internal quotation marks omitted).

26           A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

27   See Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

28   (9th Cir. 1984). When applied to a complaint, the term "frivolous" embraces both the inarguable

legal conclusion and the fanciful factual allegation. <u>See</u> <u>Neitzke</u>, 490 U.S. at 325. The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. <u>Id.</u> at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. <u>See</u> <u>Jackson v. Arizona</u>, 885 F.2d 639, 640 (9th Cir. 1989); <u>Franklin</u>, 745 F.2d at 1227. The court need not accept the allegations in the complaint as true, but must determine whether they are fanciful, fantastic, or delusional. <u>See</u> <u>Denson v Hernandez</u>, 504 U.S. 25, 33 (1992) (quoting <u>Neitzke</u>, 490 U.S. at 328). Finally, a complaint may be dismissed as frivolous if it merely repeats pending or previously litigated claims. <u>See</u> <u>Cato v. United States</u>, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995).

Here, because the duplicative action test was developed in the context of claim preclusion, Plaintiff's current action, which the court finds is precluded, is effectively duplicative of the first three lawsuits. The claims and parties do not significantly differ between all actions. <u>See</u> <u>Adams</u>, 487 F.3d at 689. Further, under the transaction test of claim preclusion, Plaintiff's claims have all been established above as arising under the same transactional nucleus of facts.

Lastly, although Plaintiff's amended complaint has an arguable legal and factual basis, because a complaint may be considered frivolous if it repeats previously litigated claims, Plaintiff's amended complaint is also necessarily frivolous. <u>See</u> <u>Cato</u>, 70 F.3d at 1105 n.2. Thus, this Court recommends Plaintiff's complaint be dismissed as duplicative and frivolous.


## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' motion to dismiss (ECF No. 37) be granted and that this action be dismissed without leave to amend and with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of

objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 29, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE